UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 09-304 |
| v. | * | SECTION: "R" |
| JESSIE MUNCH | * | VIOLATION: 18 U.S.C. § 1343 |

\* \* \*

### FACTUAL BASIS

If this case had gone to trial, the Government would prove the following beyond a reasonable doubt through competent evidence and tangible exhibits:

The defendant, **JESSIE MUNCH**, (hereinafter referred to as **MUNCH**) was employed by a local air conditioning and heating company, from June 2001 through March 2005. The company is located in New Orleans, Louisiana and provides air conditioning and heating services to customers. Witnesses would testify that **MUNCH**'s duties included handling payroll, answering telephones, handling billing, reconciling accounts payable and receivable, collections, paying vendors, as well as paying payroll taxes for the company.

Witnesses would also testify that **MUNCH** had check writing authority, although not check signing authority. The owner of the company would pre-sign checks to enable her to efficiently perform her duties without her having to get checks signed several times per day.

After writing a check to a vendor or to pay payroll taxes, **MUNCH** was supposed to accurately record the information into the company's books, as well as into the company's computer system. This included inputting the vendor name, check number, amount of the check, as well as the invoice number associated with the particular job.

The company also employed an accountant that was located in South Carolina. **MUNCH** was to provide the accountant with the company's financial records in order for the accountant to properly reconcile and account for the corporate records, including accounts payable and receivable, as well as payroll taxes.

Records would show that **MUNCH** frequently sent financial information to the accountant to allow him to perform his duties. **MUNCH** would send discs containing the company's financial information to the accountant via the United States mail as well as from the company's fax machine.

Testimony would show that the accountant relied on the information provided by **MUNCH** in order to properly reconcile the company's financial records. After the accountant finished his analysis and made the requisite corrections to the company's financial records, he would mail the corrected discs from South Carolina back to the company in New Orleans. **MUNCH** would then access the company's computer system and correct the entries.

Witnesses would testify that from on or about June 2001, and continuing until on or about March 2005, in the Eastern District of Louisiana, the defendant **MUNCH**, did knowingly and willfully devise a scheme and artifice to defraud her employer and to obtain money and property by stealing company checks and making them payable to herself, in order to convert the company's money to her own personal use.

A witness would also testify that **MUNCH** was placed into a position of trust as bookkeeper, and was given signed blank checks to pay bills and payroll taxes. **MUNCH** would then make checks payable to herself, knowing that she received a salary and was not entitled to pay herself additional funds. When **MUNCH** made these checks payable to herself, she had to then conceal this in the company books. She accomplished this by placing looseleaf paper over carbon paper, and writing in a vendor's name, which would then transfer the purported handwritten vendor name onto the company books, thus giving the appearance that the payments went to someone other than herself. She would also enter the check amount into the company books and computer as if she had paid a vendor, or federal payroll taxes, when in fact she had not. Additionally, **MUNCH** would enter false invoice numbers onto the company books and computer system for these corresponding checks that she made payable to herself without company authorization. **MUNCH** would then deposit these stolen checks into her personal bank accounts, which were insured by the Federal Deposit Insurance Corporation.

Witnesses would testify that the above actions were taken by **MUNCH** in an attempt to give the appearance of having the accounts balanced, as the amounts on the books and in the computer would match, even though these vendors or the payroll taxes had really not been paid any money.

**MUNCH** would later receive the monthly banking statements and was able to remove the cancelled checks with her name as the payee, in order to conceal her scheme.

Evidence would prove that the fraudulent information that **MUNCH** recorded into the company's books and computer, was then regularly placed onto the aforementioned discs, to be used by the company accountant. **MUNCH** would take the discs and/or financial information retrieved from the computer and/or the company books and place the items into the United States mail or send the items from the company's fax machine in New Orleans, to the accountant, who was located in South Carolina. **MUNCH** knew that by sending the accountant this fraudulent information, he would rely on the provided information when sorting out the company's finances. This would enable **MUNCH** to further conceal and continue her fraudulent activity, even though she knew that the stealing of company funds and manipulation of company finances would affect any corporate tax returns, and would eventually subject the company to penalties and interest by her not paying all company payroll taxes due.

Records would show that **MUNCH** also used the company's bank accounts to wire money to pay off bills owed to her personal creditors.

Records would show that on or about the date set forth below, in the Eastern District of Louisiana, the defendant, **MUNCH**, for the purpose of executing the scheme and artifice to defraud, knowingly transmitted in interstate commerce from Louisiana to South Carolina, by means of a wire communication, a fax, which set forth the dates and amounts of payroll taxes that were purportedly paid in the 2004 tax year. **MUNCH** knew that the amounts were fraudulent and that portions had been taken by her and converted to her personal use, and that the below fraudulent wire transaction

was necessary to hide the scheme from the company's accountant who was working on behalf of the company:

| Count | Date | FROM | TO | USE OF WIRE |
|---|---|---|---|---|
| 1 | January 14, 2005 | New Orleans, LA | Hilton Head, SC | False information to cover scheme to defraud |

As a result of the scheme, **MUNCH** embezzled approximately $287,463.74, which was misappropriated to pay off debt, fund her gambling habit, and pay for living expenses.

The above information comes from an investigation conducted by Special Agents of the Federal Bureau of Investigation, numerous records subpoenaed into a federal grand jury, interviews conducted during the investigation, and from the admissions of the defendant, **MUNCH**.

_____ 11.4.9
JON M. MAESTRI
Assistant United States Attorney
Louisiana Bar Roll No. 24838

_____ 11/04/09
JESSIE MUNCH
Defendant

_____ 11/4/09
CHARLES GRIFFIN
Attorney for Defendant

New Orleans, Louisiana
November 4, 2009